IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JENNIFER A. HADSALL,
for and on behalf of the NATIONAL LABOR
RELATIONS BOARD,

                Petitioner,

v.

ADT, LLC,

                Respondent.

OPINION and ORDER

21-cv-9-jdp

---

Petitioner Jennifer Hadsall, a regional director of the National Labor Relations Board (the board), seeks a temporary injunction against respondent ADT, LLC. The director contends that ADT is violating the National Labor Relations Act (NLRA) by withdrawing recognition of a union and making changes to the terms and conditions of its workers' employment without engaging in collective bargaining. The case is already proceeding before the board, but the NLRA gives the director the right to seek interim relief from a district court while waiting for a final decision from the board. *See* 29 U.S.C. § 160(j).

The dispute arose in 2019, after ADT decided to close its Rockford, Illinois and Madison, Wisconsin facilities and consolidate them into a new facility in Janesville, Wisconsin. The International Brotherhood of Electrical Workers Local Union 364 (the union) represented some of the Rockford employees, but the Madison employees weren't unionized. A year later, ADT withdrew recognition of the union representing the former Rockford employees.

The director contends that ADT was required to continue collectively bargaining with the former Rockford employees, which had been represented by the union since 1994. The key dispute is whether the former Rockford employees remained an "appropriate" collective

bargaining unit after the consolidation of the two facilities. The director says that the former Rockford employees remain an appropriate bargaining unit; ADT says that the consolidation of the two facilities makes it inappropriate to separate the two sets of employees for collective bargaining purposes. If the Rockford employees are an appropriate unit, the parties agree that ADT was not entitled to withdraw recognition of the union.

The court concludes that the director is entitled to temporary relief under § 160(j). Board precedent creates a presumption that a group of employees with a lengthy bargaining history remains an appropriate bargaining unit despite a change in circumstances. That presumption can be overcome, but the undisputed evidence shows that very little changed for the former Rockford and Madison employees after the transfer. Although both sets of employees now report to the same facility, they spend little time at that facility, they have little interaction with each other even after the transfer, and they continue servicing mostly separate geographic areas. Under these circumstances, the director is reasonably likely to succeed on her contention that the former Rockford employees remain an appropriate bargaining unit.

The director also moves to expedite the decision. Dkt. 20. This order moots that request.

BACKGROUND

The following undisputed facts are taken from the administrative record.

ADT installs and services residential and commercial security systems. From 1994 until 2020, ADT had a collective bargaining agreement with the union, which represented the following employees:

> All full-time and regular part-time installers, technicians and service personnel employed by the Employer at its 510 LaFayette

2

> Avenue, Rockford, Illinois facility; but excluding all office clerical employees, professional employees, guards, and supervisors as defined in the Act, and all other employees.

In September 2019, ADT closed its Rockford facility, and the Rockford employees were relocated to a temporary facility in Janesville, Wisconsin. In early 2020, the Rockford employees moved to a permanent facility in Janesville, along with employees from ADT's Madison, Wisconsin facility, who did not belong to a union as the Rockford employees did.

In May 2020, the union filed a petition to create a new bargaining unit that represented employees from both the Madison and Rockford facilities that were transferred to Janesville. Shortly thereafter, the union withdrew the petition. In June 2020, the employees from the former Madison facility and one new employee signed a petition to decertify the union; no employees from the Rockford facility signed the petition. In response to the employees' petition, ADT determined that a majority of Janesville employees did not want to be represented by the union, so ADT would withdraw recognition of the union when the collective bargaining agreement expired on August 31, 2020.

In September 2020, ADT withdrew recognition of the union and then made several changes to the employees' terms and conditions of employment without engaging in collective bargaining. Specifically, ADT made changes to wages, bonuses, overtime eligibility, vacation, sick leave, and the performance review system of the former Rockford employees.

The union filed a complaint with the board, contending that ADT's conduct violated the NLRA. On March 29, 2021, an administrative law judge (ALJ) issued a "Decision and Recommended Order," concluding that ADT's refusal to recognize the union violated the NLRA in two primary ways.[1] First, the ALJ concluded that the petition to decertify the union

---

[1] The ALJ also addressed allegations that ADT threatened its employees in violation of the

was invalid because none of the petition's signatories were represented by the union, citing *Johnson Controls, Inc.,* 386 NLRB 20 (2019). Second, the ALJ relied on *ADT Security Services, Inc.*, 355 NLRB 1388 (2010), *enfd. NLRB. v. ADT Sec. Servs., Inc.*, 689 F.3d 628, 632 (6th Cir. 2012), for the proposition that an employer must show "compelling circumstances" to withdraw recognition of a union that has a long bargaining history. The ALJ concluded that ADT failed to meet its burden because the former Madison and Rockford employees remained distinct even after the transfer, continuing to service the same, mostly separate, geographic areas they had serviced before the transfer.

As a result, the ALJ concluded that ADT had an obligation to bargain with the following unit of employees:

> All full-time and regular part-time installers, technicians and service personnel employed by the Employer at its Janesville, Wisconsin facility, who are regularly assigned to work in the service territory of the Employer's former Rockford, Illinois facility; but excluding all office clerical employees, professional employees, guards, and supervisors as defined in the Act, and all other employees.

As a remedy, the ALJ recommended that ADT be ordered to: (1) recognize the union as the exclusive representative of employees in the bargaining unit; (2) rescind any unilateral changes to the terms and conditions of the unit's employment since August 31, 2020; and (3) make employees whole for any losses incurred by the unilateral changes.

The court will discuss additional facts as they become relevant to the analysis.

---

NLRA. *See* Dkt. 19, at 18–19. Neither side asks the court to address any alleged threats, so the court will not do so.

ANALYSIS

A. Legal standard

The board will make the final decision in this case, subject to review by the Court of Appeals for the Seventh Circuit. But this court may award interim relief under 29 U.S.C. § 160(j) when doing so is "just and proper." In practice, the standard for obtaining interim relief under § 160(j) is similar to the standard that applies for obtaining a preliminary injunction under Federal Rule of Civil Procedure 65. The director must show four things: (1) she has a reasonable likelihood of prevailing on the merits; (2) there are no adequate legal remedies; (3) the union will be irreparably harmed without interim relief, and the potential harm to the union outweighs potential harm to the employer; and (4) public harm would occur without the relief. *Ohr ex rel. NLRB v. Latino Exp., Inc.*, 776 F.3d 469, 472 (7th Cir. 2015).

The director cites *Lineback v. Spurlino Materials, LLC*, for the proposition that she is required to show only that the board has a "better than negligible" chance of succeeding on the merits. 546 F.3d 491, 502 (7th Cir. 2008). But that standard, which is borrowed from the standard for obtaining a preliminary injunction, *see NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1567 (7th Cir. 1996), is outdated. "[T]he better than negligible standard was retired by the Supreme Court, and is not the proper standard to apply when evaluating the likelihood of success on the merits in a preliminary injunction motion." *Mays v. Dart*, 974 F.3d 810, 821 (7th Cir. 2020) (internal quotation marks omitted). Rather, "a plaintiff must demonstrate that its claim has some likelihood of success on the merits, not merely a better than negligible chance." *Id.* at 822. Under the court of appeals' "sliding scale approach," what amounts to "some" varies depending on the relative harms to the plaintiff and the defendant. *Id*.

The court of appeals has provided additional guidance for evaluating the law and the facts in the context of a § 160(j) petition. First, "[t]he court will give some measure of deference to the view of the ALJ in determining the likelihood of success." *Harrell ex rel. NLRB v. Am. Red Cross, Heart of Am. Blood Servs. Region*, 714 F.3d 553, 556 (7th Cir. 2013) (internal quotation marks omitted). Second, the court must also be "hospitable" to the director's view of the law, in light of her "expertise in matters of labor relations." *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 502 (7th Cir. 2008). Third, the court "owe[s] the Director a favorable construction of the evidence, much as . . . if [s]he were a plaintiff appealing the grant of summary judgment in favor of the defendant." *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 287 (7th Cir. 2001).

**B. Likelihood of success**

The parties devote the bulk of their briefs to the question whether the board is likely to succeed on its contention that ADT violated the NLRA. The director's argument is based on 29 U.S.C. § 158(a)(5), which makes it unlawful for an employer "to refuse to bargain collectively with the representatives of his employees." The parties agree that the question whether ADT violated § 158(a)(5) turns on whether the former Rockford employees are an "appropriate" bargaining unit. *See* 29 U.S.C. § 159(b) ("The Board shall decide in each case whether . . . the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.").

If the former Rockford employees are an appropriate unit, then ADT wasn't entitled to withdraw recognition of the union or change the terms and conditions of employment without engaging in collective bargaining. *See Glasser ex rel. NLRB v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 486–87 (6th Cir. 2010) ("After a merger, an employer has no duty to negotiate with a pre-merger bargaining unit that has become inappropriate. However, if a pre-merger bargaining

6

unit remains appropriate, the new employer must recognize it." (citations omitted)). Although the collective bargaining agreement expired in August 2020, "[a]n employer is required to maintain the status quo after the expiration of a collective bargaining agreement until a new agreement is reached or until the parties bargain in good faith to impasse." *Gen. Serv. Emps. Union, Loc. No. 73, SEIU, AFL-CIO, CLC v. NLRB*, 230 F.3d 909, 913 (7th Cir. 2000) (internal quotation marks omitted).

Before addressing the parties' arguments on the central issue, the court notes another issue that does not appear to be in dispute. Specifically, ADT doesn't respond to the director's argument (also adopted by the ALJ) that the June 2020 petition to decertify the union had no legal effect because it wasn't signed by anyone in the union. That's a reasonable view, so the court construes ADT's failure to develop an argument as a concession on that issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The court will disregard the decertification petition and focus on the question whether the former Rockford employees were an appropriate bargaining unit. The court also need not consider ADT's assertion that it's decision to consolidate the two facilities was motivated by legitimate business reasons rather than a desire to undermine the union. The director's arguments do not rely on any improper motivation.

The key question in determining an appropriate bargaining unit is whether the employees at issue share a "community of interest" separate from employees outside the proposed unit. *Dodge of Naperville, Inc. v. NLRB*, 796 F.3d 31, 38 (D.C. Cir. 2015); *NLRB v. Joe B. Foods, Inc.*, 953 F.2d 287, 292–93 (7th Cir. 1992); *Pcc Structurals, Inc.*, 365 NLRB No. 160 (Dec. 15, 2017); *Overnite Transp. Co.*, 322 NLRB 723, 724 (1996). Relevant factors include differences in pay, supervision, job functions or job location, frequency of contact, functional

integration, and the history of bargaining. *Joe B. Foods*, 953 F.2d at 297; *Overnite*, 322 NLRB at 724.

In this case, there is no dispute that the Rockford employees were an appropriate unit while the Rockford facility was still open. After all, that unit existed for 26 years. *See Cent. States, Se. & Sw. Areas Pension Fund v. Joe McClelland, Inc.*, No. 92 C 3514, 1993 WL 18979, at *3 (N.D. Ill. Jan. 28, 1993) ("Once a contract designates a particular bargaining unit, that unit becomes an appropriate bargaining unit—even if the unit would not otherwise be certifiable by the NLRB."). The issue in dispute is whether the consolidation of the Rockford and Madison offices into one facility in Janesville destroyed the community of interest that the Rockford employees had before.

The court is persuaded that the director has demonstrated a reasonable likelihood of success in showing that the Rockford employees remained an appropriate bargaining unit even after they were transferred to Janesville. Two factors inform this conclusion.

First, the Court of Appeals for the Seventh Circuit has recognized that a group of employees' previous bargaining history weighs heavily in favor of a finding that the group continues to be an appropriate bargaining unit. *See Joe B. Foods*, 953 F.2d at 293 ("In determining what constitutes an appropriate bargaining unit, the Board has long given substantial weight to prior bargaining history." (internal quotation marks omitted)). *See also Cmty. Hosps. of Cent. California v. NLRB,* 335 F.3d 1079, 1084–85 (D.C. Cir. 2003) ("[A] group of employees with a significant history of representation by a particular union presumptively constitute an appropriate bargaining unit."). In fact, the board has repeatedly held that "compelling circumstances" are required to overcome the presumption that a group with a long bargaining history is an appropriate unit. *See Radio Station KOMO-AM*, 324 NLRB 256 (1997);

8

*Crown Zellerbach Corp.*, 246 NLRB 202, 203–04 (1979). As already noted, the Rockford employees had a 26-year history as a bargaining unit when ADT withdrew recognition.

Second, the evidence cited by the parties and the ALJ suggests that the working conditions of the Rockford employees changed little after the transfer, supporting the view that they retained the same community of interest and defeating any argument that there were compelling circumstances justifying the withdrawal of union recognition. Specifically, the ALJ and the director cited the following evidence:

**Statements of supervisors.** Before the transfer, the manager of the Rockford facility stated that the Rockford employees "were going to stay in the Union, that everything would stay exactly the same as it is, nothing would change and [Rockford and Madison employees] would still stay separated." R. 255. The general manager stated that the Rockford employees "would be working under that Collective Bargaining Agreement and everything would be the same other than when they went to an office location." R. 57.

**Typical service area.** Neither the parties nor the ALJ have cited evidence showing how ADT determines the service area of a particular employee on a given day. The ALJ stated that ADT refused to provide such evidence in response to the director's discovery requests. Dkt. 19, at 11 n.9. The ALJ relied instead on the testimony of two Rockford employees, who said that there was no defined service area, but Rockford employees worked mostly in the Rockford area and their assignments to other areas did not increase after the transfer. *Id.* (citing R. 136–37, 256, 259). *See also* R. 72 ("Our Rockford group might go into Madison area on occasion and do the same for the Madison ADT Unit. They have been down here at times on occasion."). ADT cites no contrary evidence.

9

**On-call lists.** Two Rockford employees testified that ADT kept an emergency on-call list that always included one Madison and one Rockford employee to service each area, both before and after the transfer. R. 128–39, 147–48, 247, 263–64. ADT cites no contrary evidence.

**Other terms and conditions of employment.** For a year after closing the Rockford facility, the Rockford employees continued working under the terms and conditions of the collective bargaining agreement. R. 57. There were no changes to job titles, job descriptions, licensing requirements, pay, or the way that jobs were assigned. R. 136, 256, 258–59.[2]

**Interaction with other employees.** Before the transfer, Rockford and Madison employees would interact infrequently. For example, they might see each other when they needed to exchange parts or if a Rockford employee needed to come to the Madison facility to pick up a part. R. 113, 225, 234–35. Rockford and Madison employees also had trainings together occasionally. R. 130–31.

After the transfer, interaction was still limited. Both before and after the transfer, Rockford employees were dispatched for service calls from their own homes rather than from an ADT facility, R. 136, so sharing the same facility didn't necessarily lead to significantly more interaction. Employees generally work alone on service calls. R. 233–34. Rockford and Madison employees both pick up parts from the Janesville facility, but they are scheduled to do so on separate days. R. 138–39.

---

[2] Neither side cites specific evidence regarding the relative pay and benefits of the former Rockford and Madison employees, either before or after the transfer. ADT cited testimony of its director of labor relations that the wages of the two groups were "similar." R. 425. ADT also cites a spreadsheet that lists wage rates of individual employees, Dkt. 13-3, at 37, but it cites no witness testimony explaining the spreadsheet.

After the transfer, there was a "welcome" breakfast and one training attended by both Rockford and Madison employees at the Janesville facility. R. 143–45. ADT says that there were additional joint trainings, Dkt. 17, at 7, but it doesn't cite any evidence of that. It also says that the COVID-19 pandemic prevented more face-to-face interactions, *id.*, but it doesn't identify any specific gathering between the former Madison and Rockford employees that was canceled, and it doesn't cite specific evidence showing how the level of interaction would have been different in the absence of the pandemic.

**Supervision.** Both before and after the transfer, the Rockford and Madison employees shared the same supervisor. R.116, 137–38, 220, 260.

This evidence shows that there were few changes to the Rockford employees' working conditions after the transfer to Janesville. Under those circumstances, there is little basis for overcoming the presumption that a group of employees with a long bargaining history remains an appropriate unit, so there is a reasonable likelihood that the director will prevail on her claim that ADT violated the NLRA by withdrawing recognition of the union and unilaterally changing the terms and conditions of employment.

ADT cites evidence of the similarities between the former Rockford and Madison employees after the transfer, and it contends that the similarities show that the former Rockford employees no longer have a community of interest separate from the former Madison employees. For example, ADT says that both sets of employees perform the same type of work and have the same supervisor. But both of those things were true *before* the transfer as well. The evidence cited by the parties suggests that ADT has more or less maintained the status quo when it comes to how the former Rockford and Madison employees do their jobs from Janesville. They still serve the same, mostly separate, service areas, they still are dispatched

11

from home rather than a facility, ADT still has different employees assigned to be on call for the Rockford and Madison areas, and Rockford and Madison employees still have little interaction with each other. The separate community of interest shared by the Rockford employees may not be as distinct as some other bargaining units, but it is essentially the same community of interest that those employees have shared for the last 26 years.

If ADT had hired new employees for the Janesville facility, its position would be stronger. But in light of the weight that the court must give to the Rockford employees' bargaining history, the minimal changes caused by the transfer aren't enough to rebut the presumption that the Rockford employees remain an appropriate bargaining unit.

ADT also says that the union itself has implicitly acknowledged that the appropriate unit for bargaining includes all employees working out of the Janesville facility, as shown by the union's petition (since withdrawn) to represent all of those employees. ADT also notes that a single facility is a "presumptively appropriate" unit for collective bargaining purposes. *See Dunbar Armored, Inc. v. NLRB*, 186 F.3d 844, 847 (7th Cir. 1999). But neither the union nor the director have argued that all employees at the Janesville facility would be an inappropriate bargaining unit. That's not the question. There is no requirement to show that a unit is the "most" appropriate unit; there can be multiple appropriate units. *See American Hospital Assoc. v. NLRB,* 499 U.S. 606, 610 ("[E]mployees may seek to organize 'a unit' that is 'appropriate'— not necessarily the single most appropriate unit."); *Ralph Rogers & Co. v. NLRB*, 870 F.2d 379, 382 (7th Cir. 1989) ("If two different units are supported by substantial evidence, we will accept the Board's choice, even if we do not agree that the Board chose the most appropriate unit, and we will not substitute our own preference."). So even if all the Janesville employees

12

would be a more appropriate bargaining unit, it doesn't follow that the former Rockford employees are an inappropriate unit.

Board precedent supports a conclusion that the director is likely to succeed on the merits. The most notable case is *ADT Sec. Servs., Inc. & Loc. Union 131, Int'l Bhd. of Elec. Workers (Ibew), Afl-Cio.*, 355 NLRB 1388 (2010) (*ADT I*), which involved the same respondent. That case involved a group of service employees who worked out of ADT's Kalamazoo, Michigan facility. In 2008, ADT closed that facility and reassigned the service employees to operate out of its Wyoming, Michigan facility. The Kalamazoo employees had a 29-year bargaining history; the Wyoming employees weren't unionized. As in this case, ADT withdrew recognition of the union on the ground that it no longer represented an appropriate unit.

The board concluded that ADT had violated the NLRA, relying on the lengthy bargaining history of the unit and the lack of significant changes to the Kalamazoo employees' working conditions after the transfer. The board stated, "[e]ven after the closure of the Kalamazoo facility, the employees in the unit continued to perform the same work in the same distinct geographical area under largely unchanged terms and conditions of employment." The board also rejected ADT's contention that the Kalamazoo employees had been "integrated" into the Wyoming facility, noting that the Kalamazoo and Wyoming employees had different service areas, on-call lists, and rates of pay. The Court of Appeals for the Sixth Circuit later enforced the order, concluding that the board's order was supported by substantial evidence. *See NLRB v. ADT Sec. Servs., Inc.,* 689 F.3d 628, 634–35 (6th Cir. 2012).

Despite the similarities between *ADT I* and this case, ADT says that the case is "inapposite" because the collective bargaining agreement of the Kalamazoo employees identified a specific "service territory" of the employees. In this case, the Rockford employees'

13

collective bargaining agreement doesn't specify a service territory. But the court isn't persuaded that the difference is meaningful. Neither the board nor the court of appeals emphasized that a service territory was defined in the collective bargaining agreement in *ADT I*. The important point was that the Kalamazoo employees retained their community of interest by continuing to service the same areas both before and after the transfer. That is the same situation in this case.

*Comar, Inc. v. NLRB*, 111 F. App'x 1 (D.C. Cir. 2004), and *Dodge of Naperville, Inc. v. NLRB*, 796 F.3d 31 (D.C. Cir. 2015), also support the director's position. In both cases, the court upheld board decisions finding that a group of employees remained an appropriate bargaining unit even after they were relocated to a different facility with other employees who performed similar work. Again, the court relied on the employees' bargaining history and the lack of significant changes to the employees' working conditions after the relocation. *See Comar*, 111 F. App'x at 2 ("There is substantial evidence that Comar essentially moved the applicator division unit—virtually intact—to another location without a well-defined plan or timetable for achieving functional integration."); *Dodge*, 796 F.3d at 39 ("[T]he Board has repeatedly held that a historical bargaining unit remains appropriate absent a showing of 'compelling circumstances,' as this Court has recognized."). ADT cites no cases that support its position.

The court in *Dodge* raised an important point that could apply to this case as well. The court acknowledged that "it can be unworkable to continue recognizing a union representing only a historic bargaining unit if unit employees are working side-by-side with non-unit employees." 796 F.3d at 40. If the former Rockford and Madison employees become more functionally integrated in the future, the former Rockford employees may no longer be an appropriate bargaining unit. *See Pcc Structurals,* 365 NLRB No. 160 ("[T]he Board may not

14

certify petitioned-for units that are arbitrary or irrational—for example, where functional integration and similarities between two employee groups are such that neither group can be said to have any separate community of interest justifying a separate bargaining unit." (internal quotation marks omitted)). But at this point, the evidence does not support a finding that ADT has functionally integrated the two sets of employees. "It may turn out that [ADT's] withdrawal of recognition was simply premature—but premature is still improper." *Dodge*, 796 F.3d at 40.

## C. Other requirements for temporary relief

The remaining questions are whether the board has an adequate remedy at law, whether the union will be irreparably harmed without interim relief, whether potential harm to the union outweighs potential harm to ADT, and whether public harm would occur without the relief. *Ohr*, 776 F.3d at 472. The court of appeals has consistently found that each of those requirements are met in cases brought under § 160(j) in which the director has shown a reasonable likelihood of success. *See, e.g., Harrell*, 714 F.3d at 557; *Lineback*, 546 F.3d at 500–01; *Bloedorn*, 276 F.3d at 297–98; *Electro-Voice*, 83 F.3d at 1575. This is because "the same evidence that establishes the Director's likelihood of proving a violation of the NLRA may provide evidentiary support for a finding of irreparable harm," so "the prospect of an irreparable injury may be inferred from the nature of the violation of the Act." *Harrell*, 714 F.3d at 557 (internal quotation marks omitted). More specifically, it is generally reasonable to infer that a union's ability to effectively represent employees is diminished the longer the employer is able to avoid bargaining with the union. *Lineback*, 546 F.3d at 500–01. That type of harm can't be adequately remedied with damages.

In addition, the public interest is generally served "by ensuring that an unfair labor practice will not succeed because the Board takes too long to investigate and adjudicate the charge." *Id.* at 502. "[T]he public interest in the integrity of the collective bargaining process . . . is placed in jeopardy when the protracted nature of Board proceedings threatens to circumscribe the Board's ability to fully remediate unfair labor practices." *Bloedorn*, 276 F.3d at 300.

In this case, ADT doesn't identify any reasons why the usual analysis shouldn't apply, and it identifies no harm that it will suffer if the court restores the status quo from the time ADT withdrew recognition of the union. *See Electro-Voice*, 83 F.3d at 1575 (§ 160(j) "was intended as a means of preserving or restoring the status quo as it existed before the onset of unfair labor practices"). That is reason enough to find that a temporary injunction is appropriate in this case. *See Harrell*, 714 F.3d at 557.

**D. Remedy**

The director seeks the following relief:

1. Enjoining and restraining Respondent from:

(a) Refusing to recognize and bargain in good faith with the Union in the following unit: All full-time and regular part-time installers, technicians, and service personnel employed by the Employer at its Janesville, Wisconsin facility, who are regularly assigned to work in the service territory of the Employer's former Rockford, Illinois facility; but excluding all office clerical employees, professional employees, guards, and supervisors as defined in the Act, and all other employees;

(b) Making unilateral changes in terms and conditions of employment of the unit employees without first providing notice to the Union and bargaining in good faith to agreement or impasse; and

(c) In any other manner interfering with, restraining or coercing employees in the exercise of their Section 7 rights. 29 U.S.C. § 157.

2. Ordering and directing Respondent, pending final Board adjudication to:

(a) Immediately recognize the Union as the exclusive collective-bargaining representative of the employees in the following unit: All full-time and regular part-time installers, technicians, and service personnel employed by the Employer at its Janesville, Wisconsin facility, who are regularly assigned to work in the service territory of the Employer's former Rockford, Illinois facility; but excluding all office clerical employees, professional employees, guards, and supervisors as defined in the Act, and all other employees;

(b) Immediately upon request, bargain collectively and in good faith with the Union as the exclusive representative of the employees in the unit with respect to wages, hours, and other terms and conditions of employment;

(c) At the Union's discretion and upon its request, rescind any or all of the unilateral changes made after August 31, 2020;

(d) Within five (5) days of the issuance of the District Court's order, electronically distribute the District Court's order to all of the Rockford employees and post copies at its Janesville, Wisconsin, facility in all places where notices to employees are normally posted and maintain those postings during the Board's administrative proceeding free from all obstructions and defacements, and grant all employees free and unrestricted access to said postings;

17

(e) Within ten (10) days of the issuance of the District Court's order, hold a mandatory meeting or meetings through video conference or, with the Union's consent, in person at its facility, on work time with the above unit of employees, scheduled to ensure the widest possible participation, at which the District Court's order is to be read to the employees by a responsible management official, or at the Respondent's option, by a Board Agent in that official's presence; and

(f) Within fifteen (15) days of the issuance of the District Court's Decision and Order, file with the District Court and serve upon Petitioner a sworn affidavit from a responsible official describing with specificity the manner in which Respondent has complied with the terms of the Court's decree, including the locations of the posted documents and the date and time that the order was read to employees.

The court of appeals has often recognized that the purpose of an injunction under § 160(j) is to restore the status quo as it existed before the onset of the alleged unfair labor practices. *See Harrell*, 714 F.3d at 558; *Bloedorn*, 276 F.3d at 300; *Electro–Voice*, 83 F.3d at 1575. That is essentially what the director's proposed order does. Directing ADT to recognize the union as the former Rockford employees' representative, to engage in collective bargaining at the union's request, and to rescind unilateral changes made to the terms and conditions of employment returns the parties to the status that existed before ADT withdrew recognition of the union.

The court is also persuaded that distributing the order to affected employees is a reasonable means of ensuring compliance with the order and notifying employees of their rights. ADT doesn't object to the director's proposed language related to these issues.

The court takes issue with two parts of the director's proposed order. First, the director asks the court to order ADT to refrain from "interfering with, restraining or coercing employees in the exercise of their Section 7 rights." But a "follow the law" injunction such as this is disfavored and generally viewed as overbroad in the absence of a showing that the injunction is necessary to prevent related future violations. *See EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841–44 (7th Cir. 2013); *Lineback*, 546 F.3d at 504. The director hasn't made such a showing in this case, so the court will not include that portion of the proposed injunction.

Second, the director's proposed bargaining unit includes employees who are "regularly assigned to work in the service territory of the Employer's former Rockford, Illinois facility." ADT objects to this language on the ground that it intrudes on the parties' "freedom to contract" by changing how the collective bargaining agreement describes the unit. Specifically, the agreement describes the unit as employees working at the Rockford facility, but the proposed order describes the unit as employees who are regularly assigned work in the former facility's service territory. Dkt. 17, at 14. A dissenting board member made the same argument in *ADT I*, 355 NLRB at 1390–91, but it was rejected by a majority of the board and by the Court of Appeals for the Sixth Circuit. The court wrote:

> The Board's modification of the bargaining-unit description merely reflects the realty that those employees are no longer employed at the Kalamazoo facility. Having already determined that the unit retained its separate identity and remained an appropriate bargaining unit following consolidation, the Board's modification to more accurately describe the bargaining unit is within the Board's power and discretion.

*ADT*, 689 F.3d at 635–36. The court of appeals' reasoning is persuasive, and ADT cites no contrary authority.

Having said that, the director's proposed language is problematic because it doesn't define the "service area" or explain what it means to be "regularly" assigned to that area. *See* Fed. R. Civ. P. 65(d)(1)(B) (injunction must "state its terms specifically"). The director proposes an alternative unit definition in her reply brief, which the court will adopt: "all full-time and regular part-time installers, technicians and service personnel formerly employed by the Employer at its Rockford, Illinois facility." Dkt. 18, at 12. That definition achieves the same intended result, but it is clearer, more precise, and easier to enforce.

ORDER

IT IS ORDERED that petitioner Jennifer A. Hadsall's petition for temporary relief under 29 U.S.C. § 160(j) is GRANTED. The injunction will be set forth in a separate document. Petitioner's motion to expedite is DENIED as moot. The clerk of court is directed to enter judgment in favor of the petitioner and close this case.

Entered June 4, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge